UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

KEROLOS GAMAL METTRY SALEM,                                    Petitioner,

v.                                                 Civil Action No. 4:26-cv-174-DJH

MARKWAYNE MULLIN, Secretary,
Department of Homeland Security et al.,                        Respondents.[1]

\* \* \* \* \*

## MEMORANDUM AND ORDER

Petitioner Kerolos Gamal Mettry Salem, a noncitizen resident of Kentucky currently detained in the Western District of Kentucky, seeks a writ of habeas corpus pending his removal proceedings.  He alleges that his detention by immigration authorities violates the Immigration and Nationality Act, the Due Process Clause of the Fifth Amendment, and the Suspension Clause. (Docket No. 1)  The parties agreed to forgo a show-cause hearing given the absence of a material factual dispute (*see* D.N. 4), and they have submitted briefing setting out their respective legal arguments (D.N. 8; D.N. 9).  After careful consideration, the Court will deny Salem's petition for the reasons explained below.

**I.**

Salem is a native and citizen of Egypt.  (D.N. 1, PageID.3 ¶ 13; D.N. 1-6, PageID.200)  He entered the United States on or about February 15, 2024, as a "nonimmigrant (B2 Class of Admission) Visitor For Business/Pleasure" and was permitted to remain in the United States until August 14, 2024.  (D.N. 1-6, PageID.200; *see id.*, PageID.212)  Salem remained in the United

---

[1] The petition names Kristi Noem as the Secretary of the Department of Homeland Security. (Docket No. 1, PageID.3 ¶ 15)  Pursuant to Federal Rule of Civil Procedure 25(d), the current Secretary, Markwayne Mullin, has been automatically substituted as the respondent.  The Court will order that the docket be modified accordingly.

1

States beyond August 14, 2024, without authorization from immigration authorities.  (*See id.*, PageID.200, 212)  On October 29, 2025, an indictment was issued in Warren County (Kentucky) Circuit Court charging Salem for three counts of trafficking in marijuana.  (*See id.*, PageID.214) Those charges were dismissed with prejudice on February 10, 2026.  (*See* D.N. 6-2, PageID.369) On November 5, 2025, immigration officials arrested Salem in Bowling Green, Kentucky, "for being illegally present in the United States."  (D.N. 1-6, PageID.212; *see id.*, PageID.211)  An administrative arrest warrant was issued authorizing Salem's detention pursuant to 8 U.S.C. § 1226.[2]  (*Id.*, PageID.207)  Salem was placed in removal proceedings via a Notice to Appear dated December 4, 2025, which designated him as having "been admitted to the United States" and removable for remaining in the United States after August 14, 2024, "without authorization" from immigration authorities.  (*Id.*, PageID.200)

On December 17, 2025, an immigration judge denied Salem's request for a bond redetermination, finding that Salem had "not established that [his] release would not pose a danger to persons or property" based on the pending drug-trafficking charges.[3]  (D.N. 1-2, PageID.103 (internal quotation marks and citations omitted))  After the charges were dismissed with prejudice, Salem moved for a second bond redetermination.  (*See* D.N. 6-2, PageID.358–96)  On February 17, 2026, the immigration judge again denied release, finding Salem to pose a flight risk "that cannot be mitigated by the posting of a cash bond."  (D.N. 1-4, PageID.148)  Salem remains

---

[2] The warrant cited section 236 of the Immigration and Nationality Act (D.N. 1-6, PageID.207), which is codified at 8 U.S.C. § 1226.  *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *1 n.1 (W.D. Ky. Sep. 19, 2025).

[3] For individuals arrested under § 1226(a), an immigration officer makes an initial custody determination; the noncitizen may then request a custody redetermination (via a bond hearing) before an immigration judge.  *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *5 (W.D. Ky. Nov. 4, 2025) (citations omitted).

detained at the Daviess County Detention Center in Owensboro, Kentucky. (*See* D.N. 1-6, PageID.204)

Salem seeks a writ of habeas corpus against Chicago U.S. Immigration and Customs Enforcement (ICE) Field Office Director Samuel Olson, the Department of Homeland Security Secretary, the U.S. Attorney General, Daviess County Jailer Arthur Maglinger, and Acting Director of ICE Todd Lyons. (*See* D.N. 1, PageID.3–4 ¶¶ 14–18) Salem alleges that his detention violates the Immigration and Nationality Act, 8 U.S.C. § 1226; due process under the Fifth Amendment; and the Suspension Clause. (*See id.*, PageID.17–21 ¶¶ 39–61) Salem asks the Court to order his immediate release. (*See id.*, PageID.16) Respondents argue that (1) pursuant to 8 U.S.C. § 1226(e), the Court lacks jurisdiction to review the immigration judge's "discretionary decision[s]" to deny bond; (2) Salem should exhaust administrative remedies by appealing the immigration judge's decisions to the Board of Immigration Appeals; and (3) Salem "has received all process due to him" under § 1226(a). (*See* D.N. 8, PageID.458–72)

**II.**

Respondents argue that § 1226(e) bars the Court from considering Salem's petition. (*See id.*, PageID.463–66) Salem maintains that "[c]laims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas." (D.N. 9, PageID.478 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017)))

Pursuant to 8 U.S.C. § 1226(e),

> [t]he Attorney General's discretionary judgment regarding the application of [8 U.S.C. § 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e). Thus, "district courts do not have jurisdiction to review discretionary decisions made by an [immigration judge] regarding bond." *Marroquin v. Noem*, No. 26-45-DLB, 2026

3

WL 575222, at *3 (E.D. Ky. Mar. 2, 2026) (quoting *Fuentes v. Lyons*, 808 F. Supp. 3d 733, 737 (S.D. Tex. 2025)); *see Nielsen v. Preap*, 586 U.S. 392, 401 (2019).  But § 1226(e) "does not preclude the Court's exercise of jurisdiction where a noncitizen raises a constitutional challenge to the bond hearing he received." *Chavarria Mejia v. Crawford*, No. 1:26-cv-253 (LMB/LRV), 2026 WL 819603, at *4 (E.D. Va. Mar. 25, 2026) (discussing *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018)).

Here, the record reflects that both bond decisions were in fact made "[a]fter full consideration of the evidence presented," as the immigration judge stated.  (D.N. 1-2, PageID.103; D.N. 1-4, PageID.148)  The first bond decision stated: "The instant record contains strong indicia of drug trafficking, and given the serious nature of the [then-pending charges], the Court finds that [Salem] has not established that release would not pose a danger to persons or property."  (D.N. 1-2, PageID.103 (internal quotation marks omitted) (citing *In re Salas Pena*, 29 I&N Dec. 173, 174 (B.I.A. 2025); *In re Guerra*, 24 I&N Dec. 37, 40–41 (B.I.A. 2006)))

After considering Salem's second bond request in light of the dismissed drug-trafficking charges, the immigration judge found "[b]ased on the totality of the circumstances" that Salem "is a flight risk that cannot be mitigated by the posting of a cash bond."  (D.N. 1-4, PageID.148)  The immigration judge "considered several factors for bond," including

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

4

(D.N. 1-4, PageID.148 (citing *In re Guerra*, 24 I&N Dec. at 40))  The factors from *In re Guerra* that the immigration judge cited are the well-established standard for considering whether a noncitizen may be released on bond.  *See Nielsen*, 586 U.S. at 398; *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (describing *In re Guerra* as "BIA precedent" for an immigration judge "[t]o determine whether an alien is a danger to the community or a risk of flight").

Salem asserts that "[a] fair and constitutionally adequate allowance of [c]ongressionally permitted release from custody . . . is futile and illusory[] under current . . . [Department of Homeland Security] policy and practice" (D.N. 1, PageID.6 ¶ 32); that he "is being deprived of an adequate and meaningful process to challenge his ongoing confinement" (*id.*, PageID.18); that "the current procedure" of bond hearings imposes "onerous or illusory release standards" (*id.*, PageID.19 ¶ 50); that the immigration judge "denied the first bond [request] . . . perfunctorily, with a template denial, [despite Salem's] 76 pages of careful explanation of fact and law" in support of the request (D.N. 9, PageID.477; *see* D.N. 1-1, PageID.25–100); and that the immigration judge's "second bond order, denying bond allegedly because of flight risk, is a mere boilerplate of factors to be considered, with no analysis as to what shows he is a flight risk."  (D.N. 9, PageID.477)

Although Salem at times "couches his [p]etition in the language of . . . constitutional critique," he "ultimately takes issue with the [immigration judge's] discretionary decision[s] to deny bond."  *Guiracocha v. Noem*, No. 26-62-DLB, 2026 WL 622860, at *4 (E.D. Ky. Mar. 5, 2026).  In support of his arguments, Salem recounts evidence as to dangerousness and flight risk that he presented in his bond-redetermination requests.  (*See, e.g.*, D.N. 1, PageID.19 ¶ 50 ("With his lack of criminal convictions and availability of bond funds and sponsor, there is no rational explanation for detaining Petitioner."); D.N. 9, PageID.477 ("Although the petitioner has no biological family, he does have his Christian family, his car registration, employment

authorization, lawful driver's license, employment, tax filing, English fluency, multiple legal counsel, and capacity to pay cash bond."); *id.* ("Due to the seriousness of alleged drug trafficking . . . , the petitioner dealt with that [allegation] extensively in both bond motions."); *id.* ("[A]s of [the filing of the reply brief], there has been no finding of culpability. . . . The Commonwealth dismissed the bare indictment with prejudice."); *see also* D.N. 1-1, PageID.25–100 (first redetermination request); D.N. 1-3, PageID.105–45 (second redetermination request)) These arguments ultimately challenge the immigration judge's weighing of the evidence in reaching the bond decisions.  Therefore, § 1226(e) bars the Court from considering Salem's claims. *See Guiracocha*, 2026 WL 622860, at *4 (concluding that the court lacked jurisdiction under § 1226(e) where the immigration judge's bond determination was made "[a]fter full consideration of the evidence presented" and where the petitioner effectively "argue[d] that the [immigration judge] came to the wrong conclusion after reviewing the evidence"); *Alabdulaziz v. Tindall*, No. 3:26-CV-178-CHB, 2026 WL 973278, at *4 (W.D. Ky. Apr. 10, 2026) (finding lack of jurisdiction to consider allegations that the immigration judge "failed to analyze the evidence . . . and simply made a pretextual bond determination of danger and flight risk" and where the petitioner "rehash[ed] the evidence presented and arguments made at his bond hearing"); *cf. Rodriguez v. Greene*, No. 4:26-cv-0333, 2026 WL 574961, at *12 (N.D. Ohio Mar. 2, 2026) (stating that the court was "hesitant" to conclude that a bond hearing "comported with Due Process requirements" where the immigration judge's decision "contain[ed] zero reference to any record or arguments put forth by either party"); *see id.* at *2 (observing that the immigration judge's order denying bond, based on a purported lack of jurisdiction, also "d[id] not identify any specific or personalized reason for the assertion that Petitioner is a danger to the community and/or a flight risk" as an alternative ground to deny bond); *cf. Azalyar v. Raycraft*, 814 F. Supp. 3d 926, 934

(S.D. Ohio 2026) (concluding that a bond hearing "was not constitutionally adequate" because the immigration judge, based on a purported lack of jurisdiction, "was functionally unable to make an individualized assessment of the [alleged] need to re-detain" the petitioner (alteration in original) (internal quotation marks and citation omitted)).

**III.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)   The Clerk of Court is **DIRECTED** to substitute Markwayne Mullin, Secretary of the Department of Homeland Security, as a respondent in the record of this matter.

(2)   Salem's petition for a writ of habeas corpus (D.N. 1) is **DENIED** without prejudice.

(3)   Salem's motion for an order to show cause (D.N. 3) is **DENIED** as moot.

(4)   This matter is **DISMISSED**, **STRICKEN** from the Court's docket, and **CLOSED**.

April 30, 2026

**David J. Hale, Chief Judge**
**United States District Court**

7